**Potocny v. Catalano**

*Joseph C. Mesics,* of *Henry & Mesics,* for plaintiffs.

*Samuel G. Weiss, Jr.,* of *Weiss & Weiss,* for defendants.

WALTER, *J.,* August 4, 1977—This matter is before us on preliminary objections filed by defendants. On April 1, 1977, plaintiffs[1] filed their petition for declaratory judgment asking the court to decree that their promotions to sergeant made by the Mayor of Lebanon were lawful and that they be paid wages accordingly. Defendants filed prelimi-

---

1. Police officers of the Lebanon City Police Department whose sergeant pay halted under circumstances later explained.

nary objections in the nature of a demurrer and a motion to strike defendants on June 20, 1977, some 81 days later. Plaintiffs have not raised the matter of timeliness; perhaps, it is because other related matters involving some of the parties were already in the boiling pot.

Pursuant to Lebanon Co. R.C.P. 1028 defendants filed a memorandum of law with their preliminary objections; plaintiffs filed an answering brief. We have had benefit of the oral arguments from both sides.

The controversy arose in the following manner. On February 10, 1977, a Lebanon City ordinance known as Bill No. 25 of the 1974-75 City Council Sessions was in effect. It established a table of organization for the City Police Department providing, inter alia, four sergeants (three platoon and one relief) and two detective-sergeants (one each for the criminal and juvenile divisions). The ordinance permitted the police chief to move officers laterally from the patrol division (set at 36 in number) to the detective division and back again, at his discretion and with approval of the mayor. It continued the complement of four detective-sergeants then extant until the prescribed number of two was achieved by attrition.

The two positions of detective-sergeant were vacant for more than one year immediately prior to February 10, 1977. On that date, Lebanon Mayor George H. Heverling, Jr. notified the members of City Council he was making promotions and transfers to fill the vacancies effective February 14, 1977 at 8 a.m. That was accomplished by transferring Sergeants Keim and Reilly from the patrol division to the detective-sergeant positions and

promoting petitioners to the vacated sergeant spots from the uniformed ranks.

At the City Council meeting on February 14, 1977, defendant Nofie J. Catalano introduced a handwritten ordinance which changed the Police Department Table of Organization by eliminating the two detective-sergeant positions. It passed first reading that night and second reading on February 28, 1977, thereby becoming an effective ordinance known as Bill No. 64 of City Council Sessions 1976-77. Each time defendants voted in favor of the ordinance; the Mayor and Councilman Richard Bleistine voted against it.

The City Solicitor thereafter notified the Mayor and the City Clerk that only four officers could be paid sergeant's wages under Bill No. 64. Accordingly, the Mayor retransferred Sergeants Keim and Reilly back to the uniform division and by letter to the City Clerk dated March 23, 1977 outlining the move, instructed her, under protest, to temporarily suspend paying sergeant's wages to petitioners.

In their petition for declaratory judgment, Potocny and Gruber contend their appointments to sergeant were lawful; Bill No. 64, Sessions 1976-77 effects a demotion and contravenes the Third Class City Code; and by the necessary temporary suspension of petitioners' wages they have been deprived of the benefits attached to their positions as sergeant.

A demurrer in the context of this case performs the function of raising the objection plaintiffs have not pleaded a cause of action. Effectively, it states, "What you say may be true, but you still have not established a legal foundation for suit." The demurrer here admits as true the facts averred in plaintiffs' petition. Consequently, disposition of

the demurrer is to be made on that basis. It follows, then, in deciding the merits of defendants' demurrer the court must overrule it if those averment of fact, accepted as true, mind you, state a cause of action.

We must decide three issues to properly treat defendants' demurrer. They are:

1. Whether this is a proper action for application of the Declaratory Judgment Act?

2. Is Council's power to create organization tables for the police department greater than the Mayor's power to promote and demote?

3. Are the parties present proper in light of the Declaratory Judgment Act's requirements?

In doing so we will necessarily dispose of defendants' second preliminary objection as the question of whether defendants are proper parties is an integral issue of the demurrer.

Defendants first contend this action is not proper subject matter to be taken under the Uniform Declaratory Judgments Act.[2] They argue what defendants did as the majority voice on Council was proper, lawful and cost-saving to the taxpayers of the community, to boot. They further urge that because statutory law of the Third Class City Code gives Council complete discretion in setting numbers, grades and compensation relative to the police department, petitioners have no right to their positions[3] and no standing to complain about the action taken. But each contention only begs the question.

---

2. Act of June 18, 1923, P.L. 840, sec. 1 et seq., as amended, 12 P.S. §831 et seq.

3. Actually, unless a policeman is advanced in rank under a Civil Service Program he has no inherent right to be continued as an officer—only a policeman.

The Uniform Declaratory Judgments Act as amended[4] allows relief by judgment or decree where "...(1) an actual controversy exists between contending parties, or (2) where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or (3) where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that...there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein. . ."

In the case before us petitioners are asserting their rights to positions as sergeants in the Lebanon City Police Department and all benefits accruing therefrom. Defendants, by their actions, allegedly have caused petitioners to be denied them. For reasons which will become evident in later discussion we are satisfied Potocny and Gruber have claimed a legal right and status in which they have concrete interest and which has been denied by adversary parties—the defendants. That satisfies the third alternate requisite of the Act.

Moreover we are persuaded an actual controversy exists between contending parties and there are ripening seeds of future controversies which are manifestly imminent and inevitable. For there are several related questions presented by this case. Among them are: May City Council subsequently invalidate a Mayor's lawful promotion? Can a policeman who receives patrolman's wages be considered a sergeant? May a City Coun-

---

4. Act of July 25, 1963, P.L. 305, sec. 1, 12 P.S. §836.

cil Ordinance conflict with a constitutional power which our state appellate courts have ruled inheres in the Mayor?

Therefore, we exercise our discretion and hold the case at bar is proper subject for proceedings under the Uniform Declaratory Judgment Act.[5]

Let us now turn to the matter of conflicting powers. Under the Third Class City Code two sections in article XX, the Police Bureau, one which immediately follows the other, bear directly on and constitute the gravamen of the controversy. Each was most recently amended[6] in 1967 but the basic power exercised by Council and the Mayor in February of this year has been in position since 1951. Those sections are, in pertinent part, as follows:

"§37001 . . . The council shall fix, by ordinance, the number, grades and compensation of the members of the city police force . . . Council shall prescribe all necessary rules and regulations for the organization and government of the police force. . . ."

"§37002 . . . The mayor shall designate, from the force, the chief and other officers who shall serve as such officers until their successors are appointed and qualified. . . ."

Thus, specific areas of activity are clearly defined and established. That they might conflict may not be evident on the surface nor at first blush. But as we will see, they do. They are independent of each other and obviously creatures of the legislature. Thus, the duties prescribed must be administered in conjunction with each other as

---

5. Supra.

6. By the Act of December 27, 1967, P.L. 893, secs. 1 and 2, 53 P.S. §§37001 and 37002.

far as is practicable and in harmony with what courts have heretofore proclaimed.

Defendants urge that the power conferred on Council to prescribe all rules and regulations necessary for organization of the police force invests them with the authority to change the table of rank at their discretion. To put it in proper prospective, they are contending that had plaintiffs been sergeants for years it would make no difference. "The power to organize is the power to eliminate", may well be their credo here.

In the landmark decision of Zeloyle v. Bettor, 371 Pa. 546, 91 A.2d 901 (1952), the State Supreme Court fairly settled the matter of promotion and demotion power. There defendant was appointed chief of police by the city council under the old Third Class City Code.[7] After the 1951 amendments to the Code the Mayor demoted defendant and replaced him with plaintiff. Council objected claiming demotions were within their province. In correcting that impression Justice Charles Alvin Jones, speaking for a unanimous court, said:

". . . By Section 2002[8] of The Third Class City Code of 1951 the power to designate chiefs and other officers for the police force was transferred from the council to the mayor so that, as the law now stands, it is the mayor who '. . . shall designate, from the force, the chief and other officers who shall serve as such officers until their successors are appointed and qualified.' Since the power to demote formerly inhered in the council by virtue of its power to designate under the law of 1931 . . . by like token, the power to demote now inheres in the

---

7. Act of June 23, 1931, P.L. 932, Art. XX, sec. 2002.
8. Act of June 28, 1951, P.L. 662, sec. 20, 53 P.S. §37002.

mayor by virtue of his power to designate under the Code of 1951." (Footnote added, case citations omitted.)

". . . All that was done by the Code of 1951, in presently material regard, was the naming of a new repository of the power, the scope of which remains the same . . . Council's power to appoint being gone, its power to demote is likewise extinct. . . ."

See also Roland v. Heverling, Jr., 56 D. & C. 2d 460, 14 Lebanon 109 (1972), where President Judge G. Thomas Gates in a learned, articulate opinion traces the recent history of who had the power and when. It is to be noted that court upheld the promotions made by the then Mayor and with which Council expressed disagreement by freezing the salaries of those promoted at their prior level. See also Sposito v. City of Farrell, 82 D. & C. 465 (1952), where City Council unsuccessfully attempted to thwart the Mayor's power to appoint a police chief, by a legislative edict that all policemen should be of a single grade. See Zeloyle further where Mr. Justice Jones said at page 551: "it has long been the law that municipal ordinances are invalid insofar as they conflict with Acts of the legislature or insofar as they can fairly be regarded as having been supplanted by statute." (And cases cited.)

There is no doubt then the Mayor, as opposed to Council, has the sole power to promote and demote. But he must do so within the framework of the organization created by Council. He may not with his power, willy-nilly make sergeants of all patrolmen, to make the point. However, what Mayor Heverling did here, assuming the truth of the allegations set forth in plaintiffs' petition, was

perfectly legal and precisely within the parameters of organization then in existence. Once the promotions were made, Council could not bring about by indirection that which they cannot nor may not do directly — the demotion of two sergeants by simply eliminating the positions. Thus, with respect to the matter of the possessor of power to promote and demote, a cause of action has been stated by the plaintiffs.

Plaintiffs claim if there was any demotion it was an act of the Mayor, not theirs at any rate; what they did was to reduce the number of positions, and the actual selection of those to be moved out was the Mayor's. Yet a close reading of his letter[9] to the City Clerk reveals a direction by him to her of *temporarily* suspending sergeant's wages to Potocny and Gruber; furthermore, the Mayor refers to them throughout the missive as sergeants.

It ill comports with dignity and logic for defendants to contend they did not demote plaintiffs by arguing it was the Mayor who did it, if only by way of ordering sergeant's wages for them to cease. In the chain of cause and effect the affirmative vote of the three defendants on Bill No. 64 was the sine qua non — that without which the ultimate result would not have occurred. It was the indispensable ingredient of this mix before us — a charitable reference, indeed. Mayor Heverling would have experienced no compulsion to do what he did — even under protest — without that occurrence.

Finally, and likewise, the question of proper parties has been resolved. For the reasons stated earlier, defendants individually are properly joined — they took the action in passing that ordinance

_____
9. It was included as Exhibit "E" in plaintiffs' complaint.

which fathered this proceeding. Defendants argue the Mayor is the only proper party defendant in that plaintiffs alleged illegal deprivation of benefits resulted from action taken by the Mayor when he ordered reduced wages for them. But we have been over that ground before.

Moreover, the city is a proper party under the Act of July 25, 1963, P.L. 305, sec. 2, 12 P.S. §841. That statute provides in pertinent part, ". . . In any proceeding which involves the validity of a municipal ordinance . . . such municipality shall be made a party and shall be entitled to be heard. . . ." So that section is satisfied, as well.

We do not decide here the merits of the case alleged by plaintiffs, only that they have stated a cause of action, there is a justiciable controversy outlined by their allegations and the parties sued by them are proper. The merits of their claims must now be resolved at a hearing to be set later after defendants have had an opportunity to respond to plaintiffs' averments of fact as provided by law.

We would observe, however, this is only the most recent in a lengthy series of litigation involving City Council members and the city, which started some six or seven years ago. When one views the matter of duties which overlap from one department to another and the absence of clearly defined lines describing responsibility, obligation and accountability which are indigenous to the commission form of government, compounded by the mounting complexities infused by state and federal programs, the resulting proliferation of suits was predictable.

But it is not the identity of personalities which has caused it. Alas and alack, it is the form of gov-

ernment which is to blame. It becomes increasingly more apparent the potential for chaos stealthily lies in waiting because of it. Lamentable as it may be the court is without power to change it. The remedy lies with the electorate, not so much in altering the identity of office holders, but modifying the nature of the offices they hold. Howbeit, until the structure of city government is revised we sadly will see numerous sequels to this chapter.

## ORDER OF COURT

And now, August 4, 1977, defendants' preliminary objections in the nature of a demurrer and a motion to strike defendant's are respectfully overruled. Leave is granted defendants to file an answer to the averments of fact contained in plaintiffs' petition, within fifteen days of this date.